UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

| | |
|---|---|
| RHONDA MACHELLE WILSON, individually and as Administrator for the Estate of Gary Steven Pressley,<br><br>                                       Plaintiff,<br>v.<br><br>UNITED STATES OF AMERICA, ELAINE CARSWELL, BOBBY DODD INSTITUTE, INC., AND DOES 1-50,<br><br>                                       Defendants. | Civil Action No.<br><br>_____ |

## COMPLAINT

Plaintiff Rhonda Machelle Wilson, individually, and as Administrator for the Estate of Gary Steven Pressley, deceased, alleges:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Rhonda Machelle Wilson ("WILSON") is the surviving mother of decedent Gary Steven Pressley ("PRESSLEY"). On August 26, 2018, she was properly appointed as the Administrator and Personal Representative of her son's estate. PRESSLEY was not married and had no children when he died by suicide on April 5, 2019.

2. WILSON brings this action against the United States of America ("USA") pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§1346(b) and 2761 *et seq.*, which vests exclusive subject matter jurisdiction in the Federal District Court. This Court has supplemental jurisdiction pursuant to 28. U.S.C. §1367 (a) over the non-FTCA negligence claims against Defendants Elaine Carswell ("CARSWELL"), Bobby Dodd Institute, Inc. ("BDI"), and Does 1-50.

1

3. Defendant BDI is a corporation organized and operating under the laws of Georgia and directly transacting business as a federal contractor at the Carl Vinson VA Medical Center ("CVVAMC.") BDI provides employment placement and training services to individuals with disabilities.

4. CARSWELL is a resident of Dublin, Georgia. She was an agent and employee of BDI who worked as an operator at the CVVAMC on April 5, 2019, when PRESSLEY died by suicide. She was acting within the course and scope of her employment when doing the things alleged herein.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §1402(b) and 32 CFR §750.32 because it is where the Defendants' negligence occurred.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. On February 20, 2020, WILSON submitted an administrative tort claim to the United States Department of Veteran Affairs as required by 28 U.S.C. §§ 2401(b) and 2675(a). WILSON's claim is based on the wrongful death of veteran PRESSLEY who died by suicide on April 5, 2019, after he shot himself in the chest with a 45-caliber pistol in the parking lot of the CVVAMC. A suicide note was found next to his bloody body which states: "This is what happens by punishing already suffering people muahahaha." The reverse side of the note read: "Thank you for the release."

7. On November 13, 2020, the U.S. Department of Veterans Affairs, denied WILSON's administrative tort claim after they determined "the claim [was] not amenable to administrative resolution" because "of [WILSON's] position relative to the agency's valuation of the claim."

## STATEMENTET OF FACTS

8. Gary Steven Pressley was born on September 1, 1990 in Hawkinsville, Georgia. He enlisted with the United States Naval Reserve on February 2, 2008 and became active-duty status on July 11, 2008.

///

9. PRESSLEY faithfully served his Country. He was awarded the Navy Good Conduct Medal, National Service Defense Medal, Global War on Terror Service Medal, and Humanitarian Service Medal. He was well regarded by his supervisors and, according to a January 15, 2012 Evaluation Report & Counseling Record, he was a "total player who produce[d] quality results with little to no supervision." He understood and supported "command goals." He was "meticulous," "focused and productive." He possessed "unlimited potential and ability" and showed a "total committed to his job and the Navy." He was "[h]ighly recommended for retention and advancement."

10. PRESSLEY was honorably discharged from the Navy on December 28, 2012, after being involved in a serious motor vehicle accident which left him disabled with a fractured hip, fractured pelvis, and chronic low back pain. He was initially evaluated at the CVVAMC on March 12, 2013. Although he was being treated for chronic pain and ambulating with a cane, he was "positive about life" and "wanted to break the record and live to 137 years old."

11. PRESSLEY continued his treatment at the CVVAMC without incident until August 22, 2014, when he "freaked out" because he had been "out of oxycodone for two weeks" and was experiencing excruciating pain. He called the VA National Suicide Prevention Hotline because he was "having thoughts of killing himself with a knife" or "driving his car into the VA clinic." He was "having difficulty getting a med refill on his pain medications" and "upset about his medication not being renewed." A potential crisis was averted when PRESSLEY was assured his prescription would be refilled.

12. On April 15, 2015, PRESSLEY's primary care physician, Mohamed Elhassan, M.D., increased his dose of hydrocodone 10/325 mg from two (2) to three (3) times a day because PRESSLEY had "suboptimal" pain control. Dr. Elhassan did not refer PRESSLEY to a pain management specialist or even recommend that he see one.

13. Ebelechukwu Nwagbata, M.D. subsequently became PRESSLEY's primary care physician. On February 1, 2016, she increased his dose of hydrocodone10/325mg to four (4) times a day, because he was "having so much pain." Dr. Nwagbata did not refer PRESSLEY to a pain management specialist, or recommend that he see one, even though he continued to require escalating doses of hydrocodone to control his pain.

14. On April 4, 2018, abruptly and without justification, Dr. Nwagbata told PRESSLEY she "needed to decrease the frequency and number of opioid medications prescribed to him." She unilaterally made this decision without consulting a pain management specialist. PRESSLEY "immediately stood up and walked out of the room, very upset." There was no legitimate reason for decreasing PRESSLEY's hydrocodone. The prescription was necessary to stabilize his chronic pain and allow him to engage in activities of daily living. Dr. Nwagbata changed her mind, and renewed PRESSLEY's hydrocodone prescription, after she recognized how her decision to decrease the medication caused PRESSLEY significant emotional stress, instability and suicidality. She also did something that should have been done almost three (3) years earlier. Dr. Nwagbata finally referred PRESSLEY to a qualified pain management specialist.

15. On April 17, 2018, the Veterans Health Administration ("VHA") authorized PRESSLEY to see Ana Maria Platon, M.D., a Board-Certified Pain Management Specialist, pursuant to the Veterans Choice Program. The VHA Consult Transmittal Authorization explained PRESSLEY needed pain management because the CVVAMC did not "provide the required service."

16. PRESSLEY initially consulted with Dr. Platon on May 16, 2018. She placed him on a comprehensive pain management program which included 100 mg of Neurontin three (3) times a day and hydrocodone 10/325mg four (4) times a day. Dr. Platon also added critically important deep tendon muscle injections to PRESSLEY's treatment plan. This procedure involved six (6) different injections

of 1% lidocaine and 10mg/1cc of Dexamethasone into the tendon sheath, ligament, and fascia of PRESSLEY's Thoracolumbar, Erector Spinae, Longissimus Thoracis, Piriformis, Latissimus Dorsi, and Tensor Fascia Latae.

17. After May 16, 2018, Dr. Platon performed PRESSLEY's deep tendon muscle injections on a monthly basis, and the Dublin VA pharmacy filled his Neurontin and hydrocodone prescriptions in a timely and consistent manner. PRESSLEY told Dr. Platon he achieved "great results" and remarkable improvement in his pain after she started performing his deep tendon muscle injections.

18. PRESSLEY achieved a new lease on life while being treated by Dr. Platon. In fact, on June 20, 2018, when Dr. Nwagbata performed PRESSLEY's annual physical examination she noted his pain was "much better than it had ever been."

19. PRESSLEY's final appointment with Dr. Platon was on January 30, 2019, when she performed his deep tendon muscle injections for the last time. Dr. Platon told PRESSLEY she was "no longer accepting VA or Choice" patients because the VA was not paying her. The VA support assistant, Latash Chatman, told PRESSLEY she would "contact his PCP to put in new Pain Consult for Alliance Spine and Pain Center." PRESSLEY was never referred to a new pain management specialist before he died by suicide on April 5, 2019.

20. On March 6, 2019, PRESSLEY called the VA and spoke with Debra Hunter. He requested his hydrocodone and gabapentin be refilled. On March 7, 2019, Dr. Nwagbata noted the "request for hydrocodone cannot be honored at this time. Patient to contact the pain medication provider for refill." Dr. Nwagbata made this notation even though she knew PRESSLEY had previously informed the VA his pain management specialist was no longer seeing him.

///
///

21. On March 6, 2019, PRESSLEY was not given an appointment to see anyone who could perform his deep tendon muscle injections. He was also not referred to a new pain management specialist. PRESSLEY was experiencing excruciating pain and significant emotional stress, instability and suicidality because Dr. Nwagbata refused to refill his hydrocodone, or refer him to someone who could perform his much needed deep tendon muscle injections. It had been over a month since PRESSLEY received his last deep tendon muscle injections, and the pain he experienced was unbearable. However, it could have been prevented if PRESSLEY would have been provided the pain management treatment that had previously been prescribed and performed by Dr. Platon.

22. On March 7, 2019, Shekita S. Whitley, R.N., sent PRESSLEY a letter and informed him the "request for hydrocodone cannot be honored at this time." PRESSLEY experienced significant emotional stress, instability and hopelessness after receiving this letter, and was desperate to obtain relief from his excruciating pain. That desperation included ending his own life if he could not obtain relief from his excruciating pain. PRESSLEY's desperation could have been completely prevented if he was properly maintained on the pain management treatment that had previously been prescribed and performed by Dr. Platon.

23. On April 4, 2019, PRESSLEY called the VA and spoke with Effie Weeks, LPN. He requested that his hydrocodone be refilled. PRESSLEY had still not been given an appointment to see anyone who could perform his deep tendon muscle injections. It had been more than two (2) months since he had received these injections and his pain was unbearable.

24. On April 5, 2019, at 09:17, PRESSLEY spoke with Dr. Nwagbata. She told PRESSLEY he needed to have a urine drug screen before she would consider refilling his hydrocodone. PRESSLEY promptly followed Dr. Nwagbata's instruction and had a urine drug screen performed that morning. Dr. Nwagbata did not refer PRESSLEY to anyone who could perform his deep tendon

muscle injections even though she knew these injections were critically important for his pain control.

25. On April 5, 2019, at 12:18, PRESSLEY spoke with certified medical assistant, Nakeasha Jackson. He explained "he had his urinalysis done and wants to know if his pain medication could be ordered." Ms. Jackson informed him his message would "be forwarded to his PCP and nurse to review and advise."

26. On April 5, 2019, at 13:28, PRESSLEY spoke with Ms. Whitley. He informed her his urine screen had been completed and wanted to know if his pain medication prescription could be filled that day. Ms. Whitley informed him "that labs are sent to Dublin for processing and results will not be available today." She stated, "it will be Monday before provider will be notified of lab results and then will reorder pain medication depending on lab results."

27. On April 5, 2019, Dr. Nwagbata, Ms. Jackson and Ms. Whitley made no effort to provide PRESSLEY with any type of pain relief whatsoever, even though they knew he was experiencing excruciating pain. He was not given a limited prescription of hydrocodone that he could take over the weekend until the results of his urine screen were available; he was not referred to a pain management specialist; and he was not given the deep tendon muscle injections which were critically necessary to control his excruciating pain.

28. PRESSLEY was so desperate for help on April 5, 2019, that he met face to face and spoke with a CVVCMC pharmacy technician at 15:45. He was in severe pain and desperately needed his medication. The technician explained "she had not received a prescription order from the doctor, so that she would be unable to fill the prescription at that time." She told PRESSLEY he "could wait a few minutes later and check back to see if she had received the order." She documented he was in pain and ambulating with a cane.

///
///

7

29. PRESSLEY returned to the pharmacy window in approximately 15 minutes to check on the status of his prescription. The technician told him "she still had not received a prescription order from his doctor."

30. PRESSLEY was experiencing extreme pain on April 5, 2019, when he spoke with Dr. Nwagbata, Ms. Whitley, Ms. Jackson and the pharmacy technician. He told them he could no longer stand the pain and desperately needed his pain medication. He informed them he felt hopeless and wanted to end his life. He actually had a gun in his possession. His request fell on deaf ears. He was not given any medication for pain relief, let alone a limited prescription for hydrocodone to help him survive the weekend. He was not referred to anyone who could perform his deep tendon muscle injections.

31. On April 5, 2019, Dr. Nwagbata knew PRESSLEY became emotionally unstable and suicidal when he did not receive adequate pain treatment and control. PRESSLEY's VA Medical records recorded an incident when he "freaked out" and called the VA National Suicide Prevention Hotline because he was "having thoughts of killing himself with a knife" or "driving his car into the VA clinic." PRESSLEY called the Suicide Prevention Hotline because was "having difficulty getting a med refill on his pain medications" and "upset about his medication not being renewed."

32. On April 5, 2019, Dr. Nwagbata knew that when she had previously seen PRESSLEY on April 4, 2018, he became emotionally unstable and suicidal when she told him she was going to decrease his hydrocodone. On April 5, 2019, even though Dr. Nwagbata knew PRESSLEY became emotionally unstable and suicidal when he did not receive adequate pain treatment, she was deliberately indifferent to his pleas for help and did absolutely nothing to provide him with any type of treatment for his excruciating pain.

///
///

33. During the afternoon of April 5, 2019, PRESSLEY's sister, Lisa Johnson, contacted the CVVAMC and spoke with Defendant CARSWELL, who was employed by BDI as an operator at the CVVAMC. Ms. Johnson told CARSWELL that PRESSLEY intended to commit suicide by 5:00 p.m. if someone did not help him. Ms. Johnson told CARSWELL her brother was in the VA parking lot sitting in his car with a loaded gun. CARSWELL did not contact the VA Police Department to let them know about the call she received from Ms. Johnson. Instead, when CARSWELL was interviewed by the VA Police Department, she falsely reported the timing and substance of the phone call she received from Ms. Johnson.

34. On April 5, 2019, at 20:07, PRESSLEY was found by a VA police officer. He was sitting in his car with a bullet through his chest. The Coroner determined PRESSLEY had been dead for 2 ½ to 3 hours. Joseph Lang, the VA investigating officer, noted in his April 5, 2019, Investigative Report:

> Lang approached the vehicle and observed a white male in the driver's seat wearing a cap and sunglasses. Lang tapped on the vehicle window and spoke to the individual who did not reply. Lang then leaned in and peeked through the window opening to find that the male, later identified as veteran, Gary S. Pressley, was covered in large amounts of blood and appeared to have a gunshot wound in the center of his chest. Lang immediately opened the vehicle door and observed Pressley's mouth to be open, bloody bubbles frothing from the chest wound, and a discoloring of his skin.

35. Officer Lang found a handwritten note lying on the center of the dashboard which stated: "This is what happens by punishing already suffering people muahahaha." The reverse side of the note read: "Thank you for the release."

## FIRST CLAIM FOR NEGLIGENCE
### (Against Defendant, United States of America)

36. WILSON realleges paragraphs 1 through 35 as if fully stated herein.

///

37. As a provider of medical services to PRESSLEY, the USA and its agents and employees at CVVAMC owed PRESSLEY a duty to provide him medical care that complied with applicable standards of care.

38. While acting within the scope of their employment, the agents and employees of the USA at the CVVAMC, breached the duty of care they owed to PRESSLEY in the following respects:

    a. Negligently failing to refer PRESSLEY to a pain management specialist before he was initially referred to Dr. Platon on or about April 17, 2018;

    b. Negligently failing to reimburse Dr. Platon for the pain management services she provided PRESSLEY, which resulted in her inability to continue treating him;

    c. Negligently failing to provide PRESSLEY with appropriate pain management after Dr. Platon stopped seeing him. These failures include, but are not limited to: (1) the failure to refill his hydrocodone prescriptions in a timely fashion, and (2) the failure to perform the critically necessary deep tendon muscle injections which Dr. Platon had been performing monthly;

    d. Negligently failing to refer PRESSLEY to a pain management specialist in a timely fashion after Dr. Platon could no longer treat him; and

    e. Negligently failing to provide PRESSLEY with any pain management treatment whatsoever on April 5, 2019, when he was hopeless and suicidal because of the severe, excruciating pain he was experiencing.

39. As a direct and proximate result of these breaches of duty, PRESSLEY experienced severe, excruciating physical pain and emotional distress before he died by suicide on April 5, 2019.

40. WILSON, as Administrator and Personal Representative for the Estate of Gary Steven Pressley, seeks all compensatory damages allowable under Georgia and federal law for the physical, mental and emotional pain, suffering and anxiety, fear, and anguish Defendant USA caused PRESSLEY to experience.

41. As a direct and proximate result of the breaches described above, WILSON, as the surviving mother and heir of PRESSLEY, seeks all compensatory damages allowable under Georgia and federal law for the wrongful and premature death of veteran PRESSLEY, including the full value of his life, tangible and intangible, as shown by the evidence.

## SECOND CLAIM FOR NEGLIGENCE
**(Against Defendants Elaine Carswell and Bobby Dodd Institute, Inc.)**

42. WILSON realleged paragraphs 1 through 41 as if fully stated herein.

43. Defendant BDI had a duty to train their employees who worked as operators at the CVVAMC regarding how to properly respond to crisis calls they received about suicidal patients who were physically present at the CVVAMC. BDI breached this duty of care because they did not properly train CARSWELL regarding how to process and respond to the telephone call she received from Lisa Johnson regarding PRESSLEY's intent to commit suicide while he was at the CVVAMC.

44. CARSWELL had a duty to properly respond to the crisis call she received from Lisa Johnson that PRESSLEY intended to commit suicide by 5:00 p.m. if someone did not help him. Ms. Johnson explained to CARSWELL that her brother was in the CVVAMC parking lot sitting in his car with a loaded gun.

45. CARSWELL breached her duty because she did not contact the VA Police Department to let them know about the call she received from Ms. Johnson. CARSWELL further breached her duty because she did not contact her supervisor to inquire about what she should do about the crisis call she received from Ms. Johnson. In an effort to cover up her negligence, when interviewed by the VA

Police Department, CARSWELL falsely reported the timing and substance of the phone calls she received from Ms. Johnson.

46. As a direct and proximate result of these breaches of duty, PRESSLEY experienced severe physical pain and emotional distress before he died by suicide on April 5, 2019.

47. WILSON, as Administrator and Personal Representative for the Estate of Gary Steven Pressley, seeks all compensatory damages allowable under Georgia and federal law for the physical, mental and emotional pain, suffering and anxiety, fear, and anguish Defendants BDI and CARSWELL caused PRESSLEY to experience before his death.

48. As a direct and proximate result of the breached described above, WILSON, as the surviving mother and heir of PRESSLEY, seeks all compensatory damages allowable under Georgia and federal law for the wrongful and premature death of PRESSLEY, including the full value of his life, tangible and intangible, as shown by the evidence.

## COMPENSATORY DAMAGES

49. Plaintiff realleged paragraphs 1 through 48 as if fully stated herein.

50. As a direct and proximate result of the aforementioned acts of negligence by all Defendants, PRESSLEY suffered excruciating physical and emotional pain and endured a painful and premature death without the dignity and respect to which he was entitled.  This emotional and physical pain was so excruciating that PRESSLEY took his own life when he shot himself through the chest while he was sitting in his car that was parked in the parking lot of the CVVAMC.

51. WILSON, as Administrator and Personal Representative for the Estate of PRESSLEY, claims the following damages from all Defendants on behalf of the Estate:

///

  a. Compensation for the physical, mental and emotional pain, suffering, anxiety, fear and discomfort suffered by PRESSLEY before his death by suicide;

  b. Compensation for funeral and burial expenses; and

  c. Compensation for any other lawful and recoverable damages as shown by the evidence and determined by the trier of fact.

52. WILSON, as the surviving mother and heir of PRESSLEY, seeks compensation for the full value of PRESSLEY's life, tangible and intangible, as shown by the evidence.

## RELIEF SOUGHT

53. Plaintiff realleged paragraphs 1 through 52 as if fully stated herein.

54. WHEREFORE, WILSON respectfully seeks and requests the following relief:

  a. That process issue and service be made and effected against Defendants in the manner prescribed by law;

  b. That Judgment be granted in favor of WILSON, as Administrator and Personal Representative for the Estate of Gary Steven Pressley, against each Defendant for compensatory damages, prejudgment interest and any other costs the Estate may be lawfully entitled to recover.

  c. That Judgment be granted in favor of WILSON, as the surviving mother and heir of PRESSLEY, against each Defendant for the full value of decedent PRESSLEY's life, prejudgment interest and any other costs she may be lawfully entitled to recover.

  d. For the Court to make a determination as to all factual disputes and damages as to Defendant USA;

///

    e.    For purposes of efficiency, WILSON proposes that the Court utilize a jury to resolve all factual disputes against Defendants CARSWELL and BDI, and in an advisory manner with regard to the claims against the USA.

    f.    For a jury trial against Defendants CARSWELL and BDI on all triable issues; and

    g.    For such additional and further relief as the Court may deem appropriate.

Respectfully submitted,
This 22nd Day of February 2021.

RHONDA MACHELLE WILSON, individually and as Administrator for the Estate of Gary Steven Pressley.

By:    *Dale C. Ray, Jr.*
Dale C. Ray, Jr., GA Bar No. 596095
FAIN, MAJOR, & BRENNAN, PC
One Premier Plaza
5605 Glenridge Drive, N.E., Suite 900
Atlanta, GA 30342
(404) 688-6633 Telephone
(404) 420-1544 Facsimile
dray@fainmajor.com

By:    *Peter G. Bertling*
Peter G. Bertling, CA Bar No. 131602
Attorney for Plaintiffs
BERTLING LAW GROUP
21 East Canon Perdido Street, Suite 204B
Santa Barbara, CA 93101
(805) 879-7558 Telephone
(805) 869-1597 Facsimile
peter@bertlinglawgroup.com
**Pro Hac Vice Pending**