```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF GEORGIA
                     DUBLIN DIVISION
```

```
RHONDA MACHELLE WILSON,         *
Individually and as             *
Administrator for the Estate    *
of Gary Steven Pressley,        *
                                *
     Plaintiff,                 *
                                *
     v.                         *    CV 321-019
                                *
ELAINE CARSWELL, BOBBY DODD     *
INSTITUTE, INC., and            *
DOES 1-50,                      *
                                *
     Defendants.                *
```

_____

O R D E R

_____

Plaintiff Rhonda Machelle Wilson filed the instant case on February 25, 2021, against the United States of America under the Federal Tort Claims Act ("FTCA"). The case involves the death by suicide of Plaintiff's decedent, her son Gary Steven Pressley, in the parking lot of the Carl Vinson VA Medical Center. Having settled her claims against the United States, the Court has supplemental jurisdiction over her negligence claims against the non-FTCA defendants, Defendant Elaine Carswell and her employer, Defendant Bobby Dodd Institute, Inc. ("BDI").

Presently, Defendants Carswell and BDI have moved for summary judgment. The Clerk gave Plaintiff notice of the summary judgment

motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 70.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. Plaintiff has filed a response, and Defendants have replied. The motion is ripe for consideration.

## I. BACKGROUND[1]

Mr. Pressley became a patient of the Carl Vinson VA Medical Center (the "VA") in Dublin, Georgia in 2013. (Pl.'s St. of Material Facts, Doc. No. 72, ¶ 12.) The VA treated Mr. Pressley for several years thereafter because of his pain and suicidal ideations associated with the pain. Mr. Pressley was prescribed pain medication, *inter alia*, that he had filled at the VA's pharmacy. (See generally id. ¶¶ 13-21.)

On April 5, 2019, Mr. Pressley sought to get his prescription for pain medication refilled except that the pharmacy never received a prescription order from his doctor. (Id. ¶¶ 19, 22-

---

[1] Unless otherwise indicated, the facts set forth herein are not in dispute.

2

23.) For more than three hours prior to his suicide that day, Mr. Pressley exchanged text messages with his girlfriend informing her that he planned to commit suicide at the VA at 5:00 p.m. (Defs.' St. of Material Facts, Doc. No. 69, ¶¶ 6-7.)

At 4:47 p.m., Mr. Pressley's sister called the VA and talked to the switchboard operator, Defendant Elaine Carswell. (Pl.'s St. of Material Facts ¶ 29.) The two would speak again during two additional calls. The conversations that they had are in dispute. Defendant Carswell has stated that the sister told her Mr. Pressley had told his family that he loved them and that they would find a dead body at the VA. (Def.'s Mot. for Summ. J., Ex. L, Doc. No. 69-14.) The sister testified that she told Defendant Carswell that Mr. Pressley was in the parking lot with a gun and that he was going to shoot himself by 5:00. (Dep. of Lisa Johnson, Doc. No. 69-6, at 47-50.) The sister further testified that she asked Defendant Carswell to send someone out to find him. (Id. at 52.) Defendant Carswell did not contact the VA Police Department about the call. It is undisputed that the sister did not provide a description of Mr. Pressley or his vehicle, did not tell Defendant Carswell that the family had confirmed Mr. Pressley was

at the VA by use of a tracking device, and did not tell her which parking lot he was in. (Defs.' St. of Material Facts ¶ 5.)

At 8:07 p.m., a police sergeant of the VA Police found Mr. Pressley with a note in his vehicle in the VA parking lot (Id. ¶ 8.) Shortly thereafter, Mr. Pressley was pronounced dead by apparent suicide by the county coroner. (Id.) The county coroner opined that Mr. Pressley had been dead for 2.5 to 3 hours before the body was found. (Id. ¶ 9.) Further, while Mr. Pressley was a current patient at the VA on the day of his death, he was an outpatient. (Id.)

Defendant Bobby Dodd Institute, Inc. ("BDI") is a nonprofit organization that provides training and job opportunities for people with disabilities to empower them to maximize their employment while securing self-sufficiency, independence, and integration into society. (Id. ¶ 1.) Defendant BDI had a contractual relationship with the VA to provide "switchboard services for the effective operations of th[e] facility." (Id. ¶ 2.) Defendant Carswell, a switchboard operator, was an employee of Defendant BDI. One of her essential duties was to handle "emergency calls." (Pl.'s St. of Material Facts ¶ 26.) According to the BDI contract with the VA, the operators were required to be

4

"trained and have the ability to handle emergency calls" and "problem solve and make decisions in emergency situations." (Id. ¶ 27.) In fact, the VA provided some of Defendant Carswell's training as a switchboard operator to include "Suicide Prevention Simulation" and "S.A.V.E. training." (Id. ¶ 28.)

Based upon these factual allegations, Plaintiff alleges a claim of negligence against Defendant Carswell in failing to properly respond to the crisis call from Mr. Pressley's sister. Plaintiff alleges a claim of negligence against Defendant BDI in its failure to properly train its employees. In moving for summary judgment, Defendants Carswell and BDI contend that Plaintiff cannot establish the elements of a negligence claim as a matter of law.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses, which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v.

Catrett, 477 U.S. 317, 322–24 (1986). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of those material facts "is 'genuine' . . . [only] if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient" for a jury to return a verdict for the nonmoving party. Id. at 252; accord Gilliard v. Ga. Dep't of Corrs., 500 F. App'x 860, 863 (11th Cir. 2012) (per curiam). Additionally, the party opposing summary judgment "may not rest upon the mere allegations or denials in its pleadings. Rather, [his] responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). As required, this Court will view the record evidence "in the light most favorable to the [nonmovant]," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and will "draw all justifiable inferences in [Plaintiff's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*) (internal quotation marks omitted).

### III. LEGAL ANALYSIS

In Georgia, to recover for injuries caused by another's negligence, a plaintiff must show a duty, a breach of that duty, causation and damages. Johnson v. Am. Nat'l Red Cross, 578 S.E.2d 106, 108 (Ga. 2003) (citation omitted). Through their motion for summary judgment, Defendants contend that Plaintiff cannot establish the duty and causation elements as a matter of law. On the element of duty, Defendants claim they owed no duty to Mr. Pressley because they did not have any relationship or prior contact with Mr. Pressley and had exercised no control over Mr. Pressley. On the causation element, Defendants claim that Georgia's "suicide rule" defeats any potential proximate cause. Upon strict application of Georgia law, the Court concludes that Mr. Pressley's suicide is an unforeseeable intervening cause of his death, barring any recovery from Defendants.

Negligence is not actionable unless it is the proximate cause of the injury. Id. (citation omitted). "Proximate cause is 'that which, in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred.'" Ga. Dep't of Transp. v. Owens, 766 S.E.2d 569, 577 (Ga. Ct. App. 2014). Suicide, under Georgia law, is deemed "an unforeseeable intervening cause that breaks any causal connection between alleged negligent conduct and the resulting death." City of Richmond Hill v. Maia, 800 S.E.2d 573, 576 (Ga. 2017). Thus, suicide absolves the alleged tortfeasor of liability

because it is an intervening act that precludes a finding of proximate cause. Georgia law recognizes only two exceptions to the suicide rule: (1) the rage or frenzy exception, and (2) the special relationship exception. Id. at 577. Plaintiff concedes that the first exception, the rage or frenzy exception, does not apply in this case. (Pl.'s Mem. in Opp'n, Doc. No. 71, at 8.) Plaintiff, however, contends that the second exception, the special relationship exception, does apply. (Id. at 8-15.)

In Maia, the Georgia Supreme Court explained that the suicide rule applies in cases involving a special relationship between the tortfeasor and the decedent – "where a tortfeasor owes the *unusual* duty to prevent the decedent from harm." 800 S.E.2d at 578 (emphasis added). Thus, as it pertains to this case, Mr. Pressley's suicide either precludes liability as a matter of law or it does not because of a special relationship between him and the Defendants. The focus, therefore, is on the relationship between Mr. Pressley and Defendants Carswell and BDI. Examples of the special relationship exception include doctor-patient, hospital-patient, police officer-detainee, and jailor-prisoner. See id.

8

Plaintiff could not responsibly argue that Mr. Pressley had a special relationship with Defendants Carswell and BDI, especially where they never had any contact. Thus, Plaintiff contends that Mr. Pressley's relationship as a patient of the VA qualifies as a special relationship and that Defendant Carswell was an agent of the VA. Plaintiff first cites Brandvain v. Ridgeview Institute, Inc., 372 S.E.2d 265 (Ga. Ct. App. 1988), in which the Georgia Court of Appeals explained that where there is a relationship with a health care professional, there is a duty owed to the patient "to exercise such reasonable care in looking after and protecting a patient as the patient's condition . . . may require. This duty extends to safeguarding and protecting the patient from any known or reasonably apprehended danger from himself . . . and to use ordinary and reasonable care to prevent it." Id. at 271 (quoted source omitted). In Brandvain the patient was hospitalized in a program for treatment of alcohol and drug abuse, and the staff was seeking involuntary commitment at the time of his suicide. Id. at 269.

Recognizing that Mr. Pressley was not a hospitalized patient and that the VA did not exercise control over him, Plaintiff urges the Court to extend the exception to reach Mr. Pressley, citing to

9

Justice Melton's special concurrence in Maia, in which he *suggests* the special relationship exception may be broader than implied by the majority. See Maia, 800 S.E.2d at 579. Justice Melton, however, did not provide any further guidance on the circumstances (outside of direct supervision or exercising control) that may give rise to a special relationship warranting an exception to the suicide rule. Neither could the Court find any other case that extends the reach of the special relationship exception to something akin to the circumstances in this case. While the issue of proximate cause is generally one for the jury, and one that would prove intriguing in this case,[2] the Court cannot go further than Georgia law allows.

Upon consideration of the circumstances of this case, and bereft of authority to find otherwise, the Court concludes Mr. Pressley did not have a special relationship with the VA as a matter of law. His long-term relationship with the VA as an

---

[2] The Court is particularly struck by the deposition testimony of Sergeant Joseph Lang of the VA Police Department, in that he explained that he had been involved in past situations where he searched the VA premises after he had notice that someone may be there with suicidal ideations. (See Pl.'s St. of Material Fact ¶ 33.) It is undisputed that Defendant Elaine Carswell, the first point of contact for the VA's telephone line, did not call the VA Police Department in response to Mr. Pressley's sister's call.

10

outpatient and the VA's policy to require suicide prevention training of its employees and contractors notwithstanding, Mr. Pressley's relationship with the VA is not so unusual to warrant finding a duty to prevent Mr. Pressley from harm. Stated another way, Mr. Pressley's outpatient relationship with the VA is no more special than the hospital-outpatient relationship of thousands of veterans. See Ermutlu v. McCorkle, 416 S.E.2d 792, 794-95 (Ga. Ct. App. 1992) (finding no special relationship between a psychiatrist and a *voluntary outpatient* because of the lack of control over the patient's conduct). This determination obviates the Court's consideration of Defendant Carswell's agency status.

In short, Plaintiff cannot establish a special exception to the suicide rule that would preclude the legal conclusion that Mr. Pressley's suicide was an unforeseeable intervening cause that breaks the causal connection between Defendants' handling of his sister's phone calls and his death. Accordingly, Defendants are entitled to summary judgment on Plaintiff's negligence claims.[3]

---

[3] Absent a finding of negligence on the part of Defendant Carswell, Defendant BDI cannot be held liable for negligent failure to train.

11

### IV.  CONCLUSION

Upon the foregoing, Defendants' motion for summary judgment as to Plaintiff's claims (doc. no. 69) is **GRANTED**.  The Clerk is directed to **ENTER FINAL JUDGMENT** in favor of Defendants and **CLOSE** this case.  Costs are taxed against Plaintiff.

**ORDER ENTERED** at Augusta, Georgia, this 21st day of October, 2022.

_____
UNITED STATES DISTRICT JUDGE